IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIC W. STRONG,

                              Petitioner,

v.                                                          OPINION and ORDER

CHRISTOPHER BUESGEN,                         21-cv-296-jdp

                              Respondent.

---

Prisoner Eric Strong has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2017 convictions in state court for first-degree sexual assault of a child and for repeated sexual assault of a child. I granted respondent's motion to dismiss on the grounds of procedural default in part. Dkt. 21. Strong's remaining claim based on counsel's ineffective assistance is fully briefed and ready for decision.

I conclude that Strong has failed to establish that the Wisconsin Court of Appeals unreasonably applied clearly established federal law when it decided that Strong did not identify any testimony or evidence that would have altered the outcome of his trial if his counsel had introduced it. Accordingly, I will deny Strong's petition.

BACKGROUND

The following facts are taken from the petition and the state court records provided by Strong and the state.

**A. Conviction**

Strong's 2017 convictions relate to sexual assaults of his daughter, K.B., and his stepdaughter, N.B., that occurred between 2010 and 2013. For reasons not fully addressed in

the state court record, the children had been placed in foster care in 2013 and were eventually adopted by their foster parents in January 2015. Dkt. 24-5, at 11. At the end of July and beginning of August 2015, first K.B. and then N.B. told their adoptive mother that Strong had put his penis in their mouths. *Id.* at 12–13. The children's adoptive mother contacted the Barron County Sherrif's Department and a detective conducted separate videotaped interviews of the two girls. Strong was charged with repeated sexual assault of N.B. and first-degree sexual assault of K.B. in September 2015.

The charges were tried to a jury in November 2016. The state called six witnesses: the children's adoptive mother; the detective who interviewed the children; the property manager of the apartment where the children lived with their biological mother for part of the period when the assaults occurred; Strong's adoptive mother, Kathy Strong[1]; and both girls. Dkt. 24-5, at 11–20. Much of the testimony established where the children lived at the time of the assaults. Kathy testified that the children's biological mother, Michelle Siewert, and Strong lived with the children in her basement from summer 2009 to April 2010. Dkt. 24-5, at 14. Kathy also testified that Strong had been married to Siewert from May 2010 to January 2012. *Id.* The property manager testified that Siewert leased and resided at an apartment from May 2010 to January 2012, which N.B. later identified as the place where Strong assaulted her. *Id.* at 13. Kathy testified that Siewert and the children lived in her basement from January 2012 to March 2013 and that during that period Kathy had forbidden Strong from coming into her house. *Id.* at 14.

---

[1] I will refer to petitioner Eric Strong as "Strong" and Kathy Strong as "Kathy."

K.B., who was 10 years old at the time of trial and was no older than six when the assaults occurred, testified that one time when living in Kathy's basement K.B. was naked in the shower with Strong and he told her "to suck on his private area." Dkt. 24-2, at 3. K.B. described Strong's private area as "sticking out straight" and said that he put his "private area" in her mouth and "a little bit of stuff came out." *Id.* K.B. testified that after this happened Strong told her, "you better not tell anyone" but that she told Siewert and Kathy. Dkt. 24-5, at 17. When testifying at trial, K.B. said that she was alone with Strong. During cross-examination, Strong's attorney reminded K.B. that in her interview with the detective, K.B. had said that N.B. and her brother were also in the shower. K.B. then testified, "yes they were" and said that she forgot that when recounting the incident at trial. *Id.* at 17.

N.B. was 11 years old at the time of trial and was no older than six when the assaults occurred. Dkt. 24-2, at 2. The court of appeals summarized her testimony as follows:

> [N.B.] described several incidents that occurred in an apartment where she and Strong had once resided when she was five to six years old. The first incident happened in a closet. Strong pulled down his pants, took out his "private area," placed it in [N.B.]'s mouth, and then rubbed it with his hand until "white stuff" came out . . . A second similar incident occurred in the laundry room, and a third similar incident occurred in Strong's bedroom . . . On other occasions, Strong touched [N.B.]'s "private part" and put his fingers inside of her.

Dkt. 24-2, at 2. N.B. testified that after the first incident in the closet Strong told her not to tell anyone about it. Dkt. 24-5, at 18. On cross-examination, she testified that she had never been in the shower with her brother, K.B., and Strong. *Id.* at 19.

Strong's attorney did not call any witnesses. Strong decided not to testify in his own defense after the court advised him of his right to do so. Dkt. 24-2, at 5.

3

During deliberations, the jury had two questions. First, the jurors wanted to know why Kathy had forbidden Strong from coming onto her property in 2012. Dkt. 24-5, at 21. Second, the jurors wanted to know why the children were put in foster care in 2013. *Id.* In response, the court informed the jury that it would need to decide the case based on the evidence presented at trial and did not answer either question. *Id.* The jury then found Strong guilty on both charges.

In December 2016, between trial and sentencing, Strong sent the court a letter that said that he wanted to fire his attorney because the attorney did not call anyone from the list of witnesses Strong gave him and "ignored key points" Strong wanted made at trial. Dkt. 24-6, at 20. Strong wanted his lawyer to call a witness to testify that he was restricted to supervised visitations with his children from 2011 until their placement in foster care in 2013 because of a physical child abuse case. Strong asserted in the December 2016 letter that "Barron County Social Services did a very detailed and in-depth investigation" and "concluded that ONLY physical abuse was present." *Id.* at 21. After holding a hearing at which Strong and his counsel appeared, the trial court granted Strong's request for a new attorney.

The state public defender appointed Strong new counsel before his sentencing in February 2017. That attorney noted that Strong had supervised visitation from September 2011 onward in response to Strong's presentence report and called three character witnesses at the sentencing hearing. Dkt. 24-5, at 21–22. The court sentenced Strong to concurrent sentences that amounted to 20 years of initial confinement followed by 20 years of extended supervision. *Id.* at 25.

**B. Appeal**

After sentencing, Strong timely filed a notice of intent to appeal his conviction and was appointed appellate counsel. Strong's appointed appellate counsel filed a no-merit report with the Wisconsin Court of Appeals. Dkt. 24-5. Strong filed a response to the no-merit report identifying several issues, including that his trial counsel provided constitutionally ineffective assistance by failing to consult with an expert, hire a private investigator, call any witnesses on Strong's behalf, or use video evidence to impeach K.B. Dkt. 24-6, at 4–5. Strong attached the December 2016 letter he had written to the trial court saying that Strong wanted to fire his trial attorney for failing to call witnesses and introduce the evidence he wanted. *Id.* at 20–21.

In response, Strong's appointed appellate counsel filed a supplemental no-merit report that concluded Strong could not bring a meritorious ineffective assistance of counsel claim based on failure to investigate. Dkt. 24-7. Appointed appellate counsel attempted to interview Siewert—who Strong had identified as a potential source of useful information—but Siewert would not agree to an interview or to be involved in the case. Dkt. 24-7, at 6. Strong's appellate counsel could not say what Siewert's testimony would have been, how it could have helped Strong's defense, or if any other unidentified individuals could have provided testimony that would have helped Strong, so he concluded that Strong did not have an adequate basis to bring a postconviction motion based on failure to investigate. 24-7, at 4. Strong again responded. He challenged the affidavit of the postconviction attorney about Siewert's unwillingness to testify as a "conclusory allegation" but did not identify any additional witnesses that trial counsel should have interviewed. Dkt. 24-8.

The court reviewed the no-merit reports, Strong's responses, and the entire record.. *See State v. Strong*, No. 2018AP1275-CRNM, 2020 WL 13348159, at *2 (Wis. Ct. App. Apr.

5

28, 2020) (reproduced at Dkt. 24-2). The no-merit report and Strong's response raised many potential appellate issues, of which the performance of Strong's counsel was just one, and the court's analysis of Strong's ineffective assistance of counsel claim was brief. The court's entire analysis is as follows:

> Strong also alleges his trial counsel provided ineffective assistance by: failing to hire a private investigator and failing to consult with an expert or to present any witnesses or expert opinion on Strong's behalf, as Strong had asked him to do; failing to move to suppress testimony that had not been disclosed in discovery; failing to impeach the victims' testimony with inaccuracies from their videotaped statements; and generally failing to subject the prosecution's case to meaningful adversarial testing.
>
> However, aside from the victims' biological mother, Strong has not identified any witnesses or experts whom he believes counsel should have interviewed or called. Postconviction counsel notes that he did attempt to interview the biological mother of the victims, but that she did not want to speak with him or become involved in the case. It is speculative to conclude the victims' biological mother or anyone else would or could have provided testimony favorable to Strong, and Strong cannot demonstrate the prejudice required for an ineffective assistance claim based on his trial counsel's failure to interview or present uncalled witnesses. Similarly, Strong has not pointed to any specific inconsistencies from the victims' videotaped statements that would have been likely to alter the outcome at trial if his trial counsel had introduced them. We also note that Strong was advised of his right to testify on his own behalf, and he waived his right to do so.

Dkt. 24-2, at 4–5. The court of appeals rejected the ineffective assistance claim and concluded that there were no arguably meritorious appellate issues.

Strong moved for reconsideration of the court's decision, contending that the court should have held an evidentiary hearing about trial counsel's failure to use the investigation from Barron County Social Services, engage a private investigator, or use videos to impeach K.B. Dkt. 24-9. Among other arguments, Strong's motion stated that "the limited record

6

available *does establish* the availability of a favorable psychological assessment that was done on Strong." Dkt. 24-9, at 3. The court denied the motion for reconsideration, saying that Strong had merely presented a variation on his argument that his trial counsel should have called witnesses, which the court already rejected. Dkt. 24-3.

Strong then filed a petition for review in the Wisconsin Supreme Court, which denied review. Dkt. 24-4, at 1. Strong timely filed a petition for writ of habeas corpus in this court.

ANALYSIS

A. Legal standard

Federal courts reviewing a state court's adjudication of postconviction claims on the merits may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or relied on an unreasonable view of the facts. *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (citing 28 U.S.C. § 2254(d)). Under the deferential standard of review required by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a state court makes a decision "contrary to" the law only if the court either: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). When the state court applies the correct governing principle, a federal court may not grant habeas relief unless the prisoner shows "that the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). For a state court's factual finding to be unreasonable, there must be no possibility of reasonable agreement with

7

the finding. *See Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015). If a state court based its decision on an unreasonable application of law or unreasonable finding of fact, federal courts review the merits of the petitioner's claims de novo. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008). If a petitioner presents a federal claim to the state court and the court issues an unexplained decision, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision." *Richter*, 562 U.S. at 102.

The deference given under 28 U.S.C. § 2254(d) applies only to the last state court decision to issue a "reasoned opinion" on the claim at issue. *See Thomas v. Clements*, 789 F.3d 760, 766–67 (7th Cir. 2015). This means that I will review the decision of the Wisconsin Court of Appeals.

1. **Proper standard of review**

Strong contends that I should review his ineffective assistance claim de novo because the court of appeals did not comply with the procedural safeguards required by *Anders v. California*, 386 U.S. 738 (1967). First, Strong contends that the court of appeals should not have summarily affirmed his judgment without conducting an evidentiary hearing. Second, Strong contends that an incorrect statement in the court's decision denying his motion for reconsideration shows it failed to conduct an adequate review of the record. I will address each of these arguments in turn.

   a. **Failure to conduct an evidentiary hearing**

Strong's arguments about the adequacy of the record involve the procedural requirements to ensure fair process set out in *Anders*, so I begin with an overview of the procedural posture of Strong's state court appeal. Criminal defendants have a right to counsel on direct appeal. *State ex rel. Flores v. State*, 516 N.W.2d 362, 367 (Wis. 1994). But that right

8

does not mean that a defendant's counsel must pursue an appeal if she thoroughly reviews the case and "believes that an appeal would be frivolous and without merit." *Id.* at 374. In cases like Strong's where the appellate counsel concludes that an appeal would be wholly frivolous, the attorney may request permission to withdraw if she does so in a way that supports her client's appeal to the best of her abilities. *Anders*, 386 U.S. at 744. To support her client's appeal when withdrawing, appellate counsel must provide "a brief referring to anything in the record that might arguably support the appeal" that will allow the reviewing court "to pursue all the more vigorously its own review" of the record to decide whether an appeal is wholly frivolous. *Id.* at 744–45.

Wisconsin has codified a procedure for this "no-merit option" in Rule of Appellate Procedure 809.32. *State ex rel. Ford v. Holm*, 2004 WI App 22, ¶ 5, 676 N.W.2d 500, 504. Where there is a no-merit report and response but no factual dispute, the court of appeals reviews the submissions and, "shall affirm the judgment of conviction . . . and relieve the attorney of further responsibility in the case" if it agrees that further appellate proceedings would be frivolous and without any arguable merit. Rule 809.32(3). But if the defendant and appellate attorney "allege disputed facts regarding matters outside the record" and the defendant's version of the facts would, if true, support a nonfrivolous appeal, then the court of appeals should "remand the case to the circuit court for an evidentiary hearing and fact-finding on those disputed facts." Rule 809.32(1)(g). In Wisconsin, an evidentiary hearing to evaluate counsel's effectiveness is known as a *Machner* hearing. *State v. Balliette*, 2011 WI 79, ¶ 31, 805 N.W.2d 334, 341 (citing *State v. Machner,* 92 Wis.2d 797, 285 (Ct.App.1979)).

Here, Strong's appellate attorney filed a no-merit report as well as a supplemental no-merit report to address the issues Strong raised in response to the first report. After reviewing

9

the no-merit reports, Strong's responses, and the entire record in Strong's case, the court of appeals decided that there were no arguably meritorious issues and summarily affirmed the judgement without remanding for a *Machner* hearing. Dkt. 24-2, at 2. Strong contends that this decision "was an unreasonable application of federal law" because "[t]here was a factual dispute between Strong and [his appellate counsel] about [Siewert]'s willingness to testify favorably for Strong" and an evidentiary hearing was necessary to develop the record about that dispute. Dkt. 29, at 12. I understand Strong's argument to be that federal law required the court of appeals to hold an evidentiary hearing to test the veracity of his counsel's affidavit about Siewert.

This argument fails because Strong did not allege facts outside the record that would have supported a nonfrivolous appeal. Strong first raised his claim that his counsel provided ineffective assistance prior to his sentencing, so it would have been reasonable for the trial court to have held a *Machner* hearing before sentencing or for the court of appeals to have remanded the case for a *Machner* hearing on direct appeal. But it was not unreasonable for the court of appeals to dismiss Strong's direct appeal without a *Machner* hearing because an "evidentiary hearing is not a fishing expedition to discover ineffective assistance; it is a forum to prove ineffective assistance." *Balliette*, 2011 WI 79, ¶68, 805 N.W.2d at 346. The defendant seeking an evidentiary hearing has the burden of explaining what evidence he intends to introduce at the hearing so that the court can assess whether the defendant's version of the facts could support an appeal. *Id.* at ¶¶ 67–68. Strong contends that a factual dispute existed because he challenged his attorney's affidavit about Siewert's willingness to testify as unreliable hearsay. But a factual dispute about Siewert's willingness to testify is immaterial to whether the court of appeals needed to remand the case to give Strong an evidentiary hearing. Strong did not say

10

what Siewert's testimony would be; the only information before the court of appeals about the potential content of Siewert's testimony was a statement in the supplemental no-merit report that "Strong indicated to the undersigned counsel that his ex-wife, Michelle Siewert might have potentially useful information for trial." Dkt. 24-7, at 4. The court of appeals did not fail to comply with the procedures under *Anders* and Rule 809.32 when it found Strong's statement about Siewert too speculative to support his ineffective assistance of counsel claim. The lack of a fact-finding hearing does not compel de novo review of the court of appeals' decision.

### b. Court of Appeals' review of the record

Strong contends that I should give no deference to the court of appeals' decision because the court of appeals incorrectly stated that Strong's December 2016 letter to the trial court requesting new counsel was not part of the record. Strong contends that this mistake shows that the court of appeals did not conduct an adequate review of the record, which necessarily makes the decision arbitrary and therefore objectively unreasonable. Dkt. 29, at 13.

Strong's argument about the court of appeals' review of the record is based on a statement in the decision denying Strong's motion for reconsideration. In that decision, the court said, "Strong first faults this court for failing to consider a letter filed in the circuit court on December 22, 2018," and noted that "the record transmitted to this court on August 14, 2018, did not contain the letter to which Strong refers." Dkt. 24-3, at 1. The letter in question was filed with the circuit court in December 2016, prior to Strong's sentencing. *See* Dkt. 24-6, at 20. It contains Strong's request to fire his trial counsel because his counsel did not call witnesses or present evidence that Strong wanted, specifically evidence about the physical abuse investigation by Barron County social services. *Id.* at 20–21. Respondent does not

dispute that the record sent to the court of appeals in August 2018 contained the December 2016 letter.

Strong asserts that the court of appeals' statement that Strong's December 2016 letter was not in the record must mean that the court did not adequately review the record. But the court of appeals' statement about the letter does not demonstrate anything about its review of the record because the confusion about the date of the letter originated in Strong's motion for reconsideration. In his motion, Strong described it as "Defendant's letter filed in the Barron County Circuit Court on December 22nd, 2018." Dkt. 24-9, at 2. The court of appeals thus relied on Strong's own description of the letter when referring to the letter in its decision. The court's reliance on Strong's description of the letter was not unreasonable and does not mean that the court failed to review the record when it considered Strong's appeal.

Nor has Strong shown that the court of appeals' decision on the merits of his ineffective assistance of counsel claim was based on confusion about the letter's date. Strong presented the substance of the allegations in the December 2016 letter to the court of appeals. Dkt. 24-9. Although the court provided only a cursory explanation of its rejection of Strong's arguments about the Barron County social services expert, Dkt. 24-3, at 2, its decision is an adjudication on the merits that requires AEDPA deference. *See Richter*, 562 U.S. at 98.

**B. Merits of the ineffective assistance of counsel claim**

The two-part test set out in *Strickland v. Washington* governs Strong's ineffective assistance of counsel claim. 466 U.S. 668 (1984). The *Strickland* standard requires Strong to show both that his counsel performance was deficient and that prejudice resulted from the deficient performance. *Id.* at 687. When analyzing whether counsel performed deficiently, there is a strong presumption that counsel's representation is reasonable, and the petitioner

12

must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687). To prove prejudice, Strong "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. It is not enough to show that a different outcome was conceivable; the "likelihood of a different result must be substantial." *Richter*, 562 U.S. at 112.

A petitioner must prove both parts of the *Strickland* test, so courts do not need to address the deficiency prong if the petitioner does not show prejudice. *Strickland*, 466 U.S. at 697. The court of appeals decided Strong's claim on the prejudice prong and did not decide whether the performance of Strong's trial counsel met *Strickland*'s deficiency prong. I will also decide this case without addressing the deficiency prong and will apply AEDPA deference when considering the prejudice prong.

### 1. Failure to investigate or call witnesses

Strong contends that his trial counsel was ineffective for failing to investigate or call any witnesses because not having any witnesses testify on his behalf made the jury speculate that he had bad character. Strong identifies three people who he believes should have been called as witnesses: his ex-wife Michelle Siewert, someone from Barron County social services who investigated Strong for a child abuse case in 2011, and Strong's biological mother, Kathryn Sonnenberg. Dkt. 29 at 13. I will address each of these potential witnesses in turn.

#### a. Michelle Siewert

The court of appeals reasonably decided that Strong could not meet the *Strickland* prejudice prong with his conclusory assertion about potential testimony from Siewert. As

13

discussed above, the only information before the court of appeals about the potential content of Siewert's testimony was a statement in the supplemental no-merit report that "Strong indicated to the undersigned counsel that his ex-wife, Michelle Siewert might have potentially useful information for trial." Dkt. 24-7, at 4. Any reasonable jurist would agree that this statement is too vague and speculative to state a claim for ineffective assistance of counsel.

Strong's briefs in support of his petition provide additional details about why he believes Siewert's testimony could have helped his trial. Strong contends that Siewert likely could have given exculpatory testimony by impeaching K.B. because K.B. testified that she told Siewert about the assault. Dkt. 29, at 20. Strong also says that, during a recess at his trial, Siewert asked him why she wasn't being called to testify, which he contends implicitly conveyed that she would have testified in his favor. *Id.* at 25. But I may not consider Strong's new factual allegations when reviewing the court of appeals' prejudice analysis. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). The court of appeals reasonably applied the *Strickland* standard to the record before it.

Even if I were to review the prejudice prong de novo and consider the additional details about Siewert, Strong's contentions about her potential testimony are too vague to establish the prejudice required under *Strickland*. Strong asserts that Siewert's question to him "mak[es] it undoubtedly implicit she would have testified favorably" for him. Dkt. 29, at 25. But this does not explain what Siewert's testimony would be or how it would be exculpatory for Strong. Strong suggests that Siewert could have contradicted K.B.'s testimony that K.B. told Siewert about the assault. Dkt. 29, at 20. But Strong does not actually state that Siewert would have

14

contradicted K.B. I conclude that Strong has not shown a reasonable probability that the outcome of his trial would have been different if his trial counsel had called Siewert as a witness.

### b. Barron County social services expert

Strong contends that his trial counsel provided ineffective assistance by failing to investigate or call a witness to testify about the Barron County social services' investigation into Strong's physical abuse of his children. Strong asserts that an expert from social services "had determined that only physical abuse had been reported by the complainants" and that it would have helped his case for the jury to know that he "was placed on supervised visits during the time-period the complainants alleged he has committed sexual assault." Dkt. 29, at 20. I understand Strong's argument to have two parts: (1) because he had supervised visits with his children he could not have sexually assaulted them; and (2) because Barron County social services investigated and psychologically assessed Strong and found he physically abused his children, it is not possible that he also sexually abused them. As discussed above, Strong squarely raised this issue in his motion for reconsideration and the court of appeals rejected it as a variation on the arguments that he made in response to the no-merit report, which the court of appeals found insufficient to meet the *Strickland* prejudice prong.

The court of appeals' decision was not obviously wrong beyond any possibility for fairminded disagreement. *Shinn*, 141 S. Ct. at 523. First, that Strong was restricted to supervised visits demonstrates only that Strong was not supposed to see his children without supervision. It does not prove that the only contact Strong had with his children was during those supervised visits—he could have disregarded the restrictions and seen them at other times.

Second, Strong's assertions about the alleged exculpatory results of the social services investigation and psychological assessment are too vague to establish that the court of appeals unreasonably applied the *Strickland* prejudice prong. Strong's motion for reconsideration contended that social services assessed Strong "for a broad range of child abuse disorders" as part of an investigation into abuse of Strong's children and "found that Strong did not have the character of a sexual predator." Dkt. 24-9, at 3.

The court of appeals rejected Strong's motion for reconsideration without providing any reasoning about the alleged favorable psychological assessment, so I must consider whether any reasonable theory would support its decision. *Richter*, 562 U.S. at 102. Strong's assertion that the social services expert found that he lacked "the character of a sexual predator" is not self-explanatory. Without further context about what the expert's assessment says, or what the expert would testify to, the statement offers nothing more than Strong's conclusory assertion that the psychological assessment was "favorable." And Strong did not provide any more information about what the assessment involved, when social services conducted it, what its results were, or how its introduction would have created a reasonable probability of a different outcome at his trial. In contrast, Strong did clearly convey that social services' investigation found physical abuse of his children. But a finding that Strong physically abused his children does not exonerate him from charges of sexual abuse. A reasonable jurist could conclude that Strong's allegations about the social services assessment and investigation were too speculative to establish prejudice under *Strickland*. Under the demanding standard for petitions brought under 28 U.S.C. § 2254(d), Strong is not entitled to habeas relief based on this allegation of ineffective assistance of counsel.

16

### c. Katheryn Sonnenberg

Strong contends that counsel was ineffective because he failed to call Kathleen Sonnenberg. Sonnenberg is Strong's biological mother. Strong contends that she rented the apartment where N.B. said Strong assaulted her, without addressing the apparent conflict between this contention and the property manager's testimony that Siewert rented the apartment or otherwise explaining Sonnenberg's connection to the apartment. Sonnenberg asserts, in an affidavit, that she was willing and able to testify on behalf of Strong and that she would have testified that two of the locations where N.B. said Strong assaulted her did not have enough space for the alleged assault to have occurred. Dkt. 4. Strong contends that the outcome of his trial would have been different if his counsel had investigated or called Sonnenberg as a witness.

Strong did not fairly present his claim concerning Sonnenberg to the court of appeals. To obtain federal habeas relief, Strong had to articulate both the operative facts and applicable law that he contends entitle him to relief in his state court proceedings. *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009). Strong raised a general ineffective assistance claim based on failure to call witnesses before the court of appeals. But Strong did not articulate any facts about the failure to investigate Sonnenberg or even mention Sonnenberg in his state court filings. This means that Strong's ineffective assistance claim related to Sonnenberg is procedurally defaulted and cannot be raised in this petition.

Even if not defaulted, this claim would also fail on the merits because Strong cannot show prejudice. Sonnenberg's affidavit asserts that neither the laundry room nor the closet where N.B. alleges Strong assaulted her had enough space for the assaults to have occurred. She asserts that laundry room was only four and a half feet by four and a half feet, with half

17

the room occupied by the washer, dryer, and a utility sink and laundry on the floor in the rest of the space. She also asserts that the two downstair closets in the apartment could not accommodate two people because they were filled with boots, shoes, and winter apparel. Her affidavit establishes that the spaces were cramped, but not that it was physically impossible for Strong to have assaulted N.B. in them. Also, Sonnenberg's affidavit does nothing to contradict N.B.'s testimony that an incident similar to the one in the laundry room occurred in Strong's bedroom and that on other occasions Strong touched N.B.'s private parts and put his fingers inside of her. Strong has not demonstrated a reasonable probability that Sonnenberg's testimony would have altered the outcome of his trial.

### 2. Impeachment with video of interviews

Strong contends that his trial counsel provided ineffective counsel by failing to introduce videotaped interviews of N.B., K.B., and their brother to impeach K.B. At trial, K.B. said that she was alone in the shower with Strong when he assaulted her. When reminded during cross-examination that in an earlier interview she previously said her siblings were also in the shower, she changed her testimony back to the prior version. In their recorded interviews, K.B.'s brother and N.B. both denied that they were present for any such incident in the shower. Strong contends that "[e]ven if counsel had impeached K.B.'s testimony somewhat without using [the videos], it is still objectively unreasonable not to introduce recorded testimony of other witnesses which directly contradict K.B.'s version of events." Dkt. 29, at 29.

Strong has not shown that the court of appeals unreasonably applied the *Strickland* prejudice prong when it rejected this claim. Strong's trial counsel impeached K.B. in several other ways. First, Strong's counsel questioned K.B. about her inconsistent testimony on cross-examination. Dkt. 24-5, at 17. Second, during N.B.'s cross-examination, she denied that she

had ever been in the shower with K.B. and Strong. *Id.* at 19. Third, during K.B.'s cross-examination counsel elicited testimony from K.B. that she told Kathy about the assault when it happened, which contradicted Kathy's earlier testimony that she had not heard anything about the abuse until July 2015. *Id.* at 14 and 17. The only additional evidence from the recorded interviews not presented to the jury was that K.B.'s brother also denied that the assault in the shower occurred. But that evidence is repetitive of N.B. testimony denying that she was in the shower with K.B. and Strong. Because the jury already had multiple reasons to question K.B.'s credibility without the video evidence, a fairminded jurist could find that Strong failed to show there was a reasonable possibility that the video would have changed the outcome of his trial. Under the deferential AEDPA standard Strong is not entitled to habeas relief on this basis.

CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Because Strong cannot make this showing, I deny a certificate of appealability. Strong may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

ORDER

IT IS ORDERED that:

1. The petition for writ of habeas corpus filed by Eric W. Strong, Dkt. 1, is DENIED.

2. Petitioner is DENIED a certificate of appealability. If petitioner wishes, he may seek a certificate from the court of appeals under Fed. R. App. P. 22.

Entered November 20, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge